Please be aware that there are pending motions for judicial notice in this matter, and if you wish to argue them, you may appeal them on our form before our hearing Tuesday. Thank you, Your Honors. Good morning, and may it please the Court. I'm Michael Harvey. I'm the head of the Defendant's Appeal and Case Consolidated Appeals. I would like to address the appeal of the denial of the anti-slap motion to strike first and reserve five minutes for a vote. The District Court here is fairly denying appellant's California anti-slap motion. We are broadly considering the misapplying of the narrow public interest exemption under California Code and Civil Procedures Section, Course 5.17b. The District Court failed to properly analyze each of the three elements that must be satisfied before this narrow exemption applies. This Court applies to no overview of the District Court's cursory order denying the anti-slap motion, which can be found in page 2 of the expert's record of the anti-slap appeal. Is that appealable? Yes, Your Honor. State procedural law does not apply in federal court. As a matter of federal law, in the United States Circuit, an order denying a California anti-slap motion has been immediately appealable since the Dodson decision in 2003. This Court has repeatedly upheld this decision under the Collateral Order Doctrine. Adopting plaintiff's position that this order is not appealable would further this Court's insisting jurisprudence untenable by creating an exception to the immediate appeal of the denial of a California anti-slap motion. Well, but if the California courts have recognized that if the lawsuit is legitimately in the public interest, if we take those cases differently, they would not end up adjudicating both the slap motion and then determining whether or not there's a basis for an interrogatory appeal. Well, under California procedure, Your Honor, that may be the case. Well, I guess the question I'm really asking you is, is that procedural or is it substantive? It is procedural, Your Honor. And frankly, adopting that rule in federal court would create a gaping hole in the Collateral Order Doctrine, which is permissible under this Court's precedent in the Supreme Court. I didn't relate the nature of the slap to the motion. Is it the same slap law in California? Well, yes, Your Honor, it does. However, once an order has been gauged as liberally appealable, the Consortium Collateral Order Doctrine implies that entire category of claim. Well, I guess inherent in Judge Schroeder's position is the recognition that the California legislature amended the anti-slap statute when it made findings that the statute as originally enacted was being used perversely by defendants to basically turn the statute on for illegitimate motions and that it was in the public interest to forbid that. I guess you'd call it a new exception. Do you? Your Honor, that is contained in the legislative history. However, as the California Supreme Court made clear, it's a public and it's a club member's decision. And this decision is to be, this exception is to be construed narrowly in order to apply only to those actions that are brought solely in the public interest. That's unlike the anti-slap law itself. But the legislature found that there might very well be actions that were being brought in the public interest that should not be subject to these motions. And in that way, I'm not sure. Your Honor, that is correct. Obviously, the California legislature did pass this exemption pursuant to statute. And in that case, the legislature decreed we want the lawsuit to go forward as opposed to allowing further delays in the prosecution of what is otherwise listed in the public interest. And that's how I read the legislative history. Did I miss something? Well, Your Honor, the legislative history is not the final word on the anti-slap statute. Well, but it goes back to our question about whether this is some kind of procedural thing. It sounds like what the legislature did was substantive. Your Honor, it created an exception to the anti-slap law. And because it was procedural, it was the first way to do it. But it's not substantive. It's an exemption. I mean, maybe that's the exception. Maybe this is an issue that only a civil law professor could appreciate. But I think it's a distinction that makes a difference. Your Honor, I understand the distinction. But, frankly, this Court's jurisprudence has already diverged in significant ways from the anti-slap law as intended by the California legislature. For instance, the Ninth Circuit allows, after the grant of an anti-slap motion, a further review complaint to be filed, which is directly contrary to California law. Further, the discovery, let me say, of the limitations of the anti-slap law applied in California court is directly contrary to the purpose of the anti-slap law, which is to conserve the resources of the parties before they begin spending litigation expenses. Okay. May I ask any questions on the latter? I don't know if it's relevant to the Supreme Court as well. Certainly. As the California Supreme Court makes in its five-members decision, the public interest exception is to be considered narrowly in order to apply only to those actions brought solely in the public interest. This is unlike the anti-slap law itself, which shall be construed broadly pursuant to the California Code of Civil Procedure, Section 465.16a. The decisions of the California Supreme Court are controlling our missions as a state law. Now, under Section 465.17b, free elements must be satisfied, plaintiffs must not seek any relief greater than or different from the relief assigned by the general public or a class of persons, please, as a member. Two, the action is successful. It enforces an important right affecting the public interest and would confer a significant benefit on the general public or a large class of persons. Three, why is it that this statute made it in this case? As I understand it, the accusation is that the aim of many of the services was to essentially falsely represent itself as the district attorney for California's 58 counties. Would they fund sending notices around and then threatening criminal prosecution and a year in jail if we let them pony over the money? Are you suggesting that because the amounts of money that they're ponying over is different that it renders the case not amenable to? Yes, Your Honor. The California Supreme Court made it clear that the public interest exemption is not to apply to any action for the plaintiff seeking individualized or personal relief, but it was meant that their seeking is to stop these fraudulent and misleading practices. The fact that they may have incidental damages of a few hundred dollars, which makes it an aligned claim that they're going to recruit these cases on their own, is a significant factor in determining whether or not this is really in the public interest or not. The question is whether it's brought solely in the public interest or whether it is also in the public interest or could benefit the public. I guess the core of your party company is that it seems to me that the crux of the lawsuit is to stop the fraudulent behavior. That's clearly in the public interest. If it also happens to benefit these proceedings of a plaintiff's fine, but as we understand the practice, it impacted tens of thousands of people, all over California. One of them there currently before the court. I guess that was his case. Well, those are the allegations, Your Honor. And the plaintiffs bore the burden of showing that all three elements of the public interest exemption were valid. Well, the understanding is they had a lawsuit. So you're saying they're asking for the wrong relief. And if they came in, if I came in and tried to do this, I don't think it would have been good for them to have a good heart. So if the first thing they do to heart is raise a lawsuit, you're saying that they can only ask for an injunctive relief. And if they ask for some sort of presumptive relief, that they now benefit from the contribution that's right in front of you, I don't think they're valid, I think. Your Honor, that's exactly what occurred in the Tortor, Envy, Nelson, and Connected case that was cited in the opening and reply briefs. And that's just why the public interest exemption does not apply here. Well, this was brought before the district court. It wasn't mentioned in the order. In that case, just this year, the plaintiff filed a putative class action under California's unfair competition law in relation to violations of the FDCPA. The tortor in court held that the public interest exemption applied because the plaintiff did not seek any personal relief. He sought no damages whatsoever. The injunctive relief he sought was not likely to benefit him personally. The court of appeal noted in the tortor in the case that the plaintiff did not seek damages, restitution, on either himself or the class or the general public. But just to interject with this question, if all the plaintiff was seeking was an injunction to stop the practice, would the plaintiff benefit from that relief as well in his or her individual case? Well, Your Honor, if that may be the case, in that case, the public interest exemption would not apply. Why wouldn't it apply? Because the injunction would also apply to the plaintiff. Is that what you're saying? Yes, Your Honor. If it's just to address the specific injury of the plaintiff, the felony injury, there's no standing. I mean, I know I'm having a hard time with the watch and the bar. You know? And frankly, Your Honor, that's another reason why the entity's law motion should have been granted, that there really isn't any standing for injunctive relief here. The plaintiffs are seeking to bar the appellants from sending all communications to the future that could violate the FDCPA. It would only institute a plus action, is it not? It would only institute a plus action. It's not an insurer's motion. So, again, I'm puzzled by your statement as to why a fraudulent injury would cause a fraud in the public interest law. Your Honor, I would just direct the court to the California cases discussed in the opening brief on pages 12 to 16. My friend, I know that I'm having a hard time hearing anything that you are throwing at me. But, Your Honor, that's because there are also three elements that have to be satisfied, and the third ones are especially relevant here. As the district courts fail to address it at all in the order to how we need it to slide, let's start with the third element. Is private enforcement necessary here? The district court in oral argument apparently relied on the language of the statute as the exclusion of the case law interpreted. It's undisputed that the Consumer Financial Protection Bureau, the CNTP, sued appellants in federal court and entered into a nationwide consent decree. Every court to consider the issue has noted the absence of any action by a government entity as a prerequisite to the application of this development in the consent decree. And I don't know if you have the, let's see if you can say anything to overrule the brand of certification. Yes, Your Honor. It is sweeping and broad. It bars the appellants from violating the FCCPA or any applicable state unfair competition law. And it also grants restitution to all of the, essentially every member of this classroom. Okay. My reading of the record was that it was not as broad as it relates to the things the plaintiffs are seeking. But I'll ask counsel to have a say. Go ahead, Your Honor. Do you want to reserve time, Joey, your law? Your Honor, I'll reserve the rest of my argument for the anti-stop motion against the motion for the legislation. Okay. Now, turning to the appeal of the denial of the motion to go arbitration, I'll make my opening remarks brief. This is the no-genuine dispute regarding the two issues raised in the opening brief. First, the district court erred in holding that the Federal Arbitration Act, the FAA, does not govern the arbitration group at issue. The district court's decision displays the sort of hostility to arbitration that the FAA was intended to prevent. Instead of falling to federal policy favoring arbitration, as stated by the Supreme Court in concession and Tony Kohler's direct evie, the district court went to great lengths to find a reason to refuse to enforce the arbitration agreement here. Falling language for the contract here, part of page 662 of the Excellency Record of the Arbitration Review, provides that the transaction subject to this agreement involve interstate commerce and that this arbitration agreement is governed by and enforceable under the Federal Arbitration Act. Counsel, your argument, in a sense, is playing music in my ears. I think you've got a good point on that, but let me ask you to look at the issue in a different way. We also recognize that where there is a threat of criminal prosecution brought by one party to the agreement, that that invalidates the agreement because it's played us against public policy. Here, your client was acting as a designated agent by contract with the county district attorney's office, threatening to jail these people if they didn't pass the body order. So why, under those circumstances, would we ever agree to the arbitration question when we simply invalidate the entire contract on that basis? Well, Your Honor, that's a direct argument that the Excellency made. It was rejected by the district court. It's a strong argument, isn't it, Your Honor? I mean, threatening the other side,  sounds like duress to me. I can't, frankly, Your Honor, that's not what the notice states. Well, the notice states that essentially you've bounced a check, and that violates whatever the penal code provision of the 476, and that if you do not enter into what amounts to a deferred prosecution agreement and sign this contract, which includes the arbitration provision, you're going to jail for a year. It doesn't have to import of the letters that were sent out. Your Honor, that notice is required by California law. That's not the point, though, is it? The question is, is that sufficient to constitute duress? And I'm not going to have a hard time concluding that it does not. No, Your Honor. You don't think it does? It doesn't. You're supposed to put a gun into the head of the person with that hand out. Your Honor, that's an argument addressing the entire contract. That's what I'm suggesting, that it invalidates the entire contract, not just the arbitration. Yes. And as this pre-court held, and what I'm suggesting, going all the way back to the crime-by-pay decision, if you are alleging a general contract offense that challenges the validity of the entire contract as opposed to the specific arbitration provision, that's a question to the arbitrator, not the court. But again, we're dealing here with criminal law, and this is akin to a drug-to-prosecution deferral, isn't it? We see those all the time in federal court. People get caught with small quantities of drugs, and the U.S. Attorney says, if you go to school and get counseling and keep your nose clean and not get arrested again for another year, we'll dismiss the charge. And that's basically a deferral of prosecution. In your honor, this is more of a dissection. The only I'm suggesting is not. I'm suggesting it's more akin to threatening criminal prosecution in a way that a punitive defendant can avoid the staging of a felony conviction if they agree to the deferral. In your honor, as it's made clear on the first page of the notice, the involvement of the program is entirely voluntary. Well, I'm suggesting to you that it's not voluntary. I know I cast a question on it, so I'm going to leave it up to the case. I'm going to say, I don't know the answer to this. I don't know if I'm supposed to try to defend the procedure in any way. It sounds like your position is the party's going to agree to apply a federal statute and then the court lastly not apply because there's going to be an opening of interstate law in California. I don't know if that's the court that's going to apply that. I don't think that's your position. Yeah, sorry to interrupt you on that. Just as well, it was his closest president, Dillard P. Toyota, in which he stated that the plain language of the arbitration agreement is determinative of whether state or federal law in terms of arbitration applies. And this same rule was followed by the California Supreme Court and the California Investment Commission. What do you think about that? You know, because it's the old sense that the rationale for it is to preserve the right of private contracts to private contracts to infringe arbitration. And that was the purpose of the NDA and the advancement of the NDA. And Concepcion was an agreement between the Los Alamitos and the NDA. And here we have a contract which we knew were an agreement which is part of the NDA which is an agreement that is one party is essentially invoking the name of the state of California, the FAA. So why does Concepcion lie against the Supreme Court? Because the Supreme Court has held that the FAA applies to all contracts regardless of whether they're commercial U.S. names or not. No, I'm not talking about whether they're commercial. Whether they may have commerce, I'm talking about whether or not they're private agreements. And indeed, this is a private agreement. There is an agreement between the private entity, my client, and the alleged orchestrator of the magistrate crime. But your client acting as an employee to the district attorney of the county that ups it off on my state action to end up in the arbitration cases that you rely on involving a romantic client. Your honor, I would respectfully turn the court to pages 139 through 143 of the evidence of record discussing the Sasha O. B. Bensinger case from the Northern District of California which concerned a arbitration under California Penal Code 14150, which is a state law that actually allows criminal misdemeanors to be referred to private arbitration and that arbitration report to be converted into a judgment with the... In that particular case, it was viewed as... It didn't concern the FAA, but it was viewed as... As part of state law, it was viewed as a private contract of the framers. And again, as a matter of state law, the FAA applies as part of the agreements going on with them. The question here is whether or not the federal arbitration under the law is this kind of private agreement or not. Because that's the issue that the rest of the... I understand, your honor. And it's understandable here that it doesn't apply to both parties in the case. I wouldn't say that. And we're worried when we ask you all these questions. Okay. You've got 50 seconds left. I'll reserve the balance of my time. Good morning, your honor. This is Jim. I apologize for the wait just now on these consolidated appeals. I'd like to start with the perpetration appeal. But of course... This is a day of hard hearings. Obviously, I will speak of... Please tell me as you get here. I think the arbitration appeal is helpful to start with the principle that the Supreme Court's decision in Granite Rock identified. This is the first principle that underscores all of our arbitration decisions. And that is, as Judge Schroeder suggested earlier, under the federal arbitration act, the Supreme Court's arbitration jurisprudence, arbitration is a matter of consent, not coercion. The first thing any court has to decide when confronted with a request to compel arbitration is whether there has been a freely consented agreement between the parties to arbitrate a dispute. It is akin to a jurisdictional inquiry because when you're asking that question, your honors, what you're really asking is, do we as a court have the power to compel arbitration? And would an arbitrator have the power to arbitrate a dispute? Yes. No. I want to be really clear about this framework because I think it is admittedly as having a little confused. There's some confusion in the briefing as well. And I think if you're going to read one Supreme Court decision, I think you should read the Granite Rock decision because it explains Buckeye. Because the union and the company in that case had the same confusion about the Buckeye decision. And so let me just point you to what I think are the most useful parts of that opinion, your honors. What the court said in Granite Rock is it's well settled that where the dispute is, it confirms contract formation. The dispute is for courts to decide. And it's cited Buckeye footnote 1, right, which draws this distinction between whether a contract has been concluded or whether the contract is illegal after it's formed, which is the allegation in Buckeye. One example is I read Buckeye and let's see, what is it, looks like 300 of 561 U.S. where they're talking about Buckeye. The Supreme Court was making the point that the arbitration clause's scope was not an issue. There was no argument there that no agreement had been formed. And the problem I'm having with the question here is whether or not the entire agreement is pointed because of the threat of state in the process. I understand the confusion entirely, Your Honor, but I'm trying to unpack it because I think in Buckeye still doesn't add. I mean, that's the fact, isn't it? It is. In Buckeye, the distinction that was being drawn was between an attack on the contract as a whole and an attack on the arbitration agreement, right? But it wasn't an attack on the contract as a whole. It is, Your Honor, but it is a question of formation. And that's the distinction that Justice Scalia draws in footnote 1 and is the distinction that the Court elaborates upon in Granite Rock because the union's lawyers there had the same confusion in Granite Rock. So if you look at pages 299 through 300 of Granite Rock, what the Court said is the local interprets some of our arguments to depart from this framework. This framework that you first decide whether there's a formed agreement. The Court decides that, right? And they said, Justice Thomas says that's not a fair reading of our opinion. First, we have to decide whether there was a validly formed agreement in Buckeye because obviously the formation of the parties' agreement was not an issue because the parties agreed that they had concluded an agreement to arbitrate and memorialize. So the question there was if you have something that, you know, everybody agrees they signed it, nobody was denying that, nobody was denying, nobody was saying there was a problem with the formation. What they were saying in Buckeye was that under Florida law, the agreement was void at the issue because it was a usurious contract. That's not the type of argument at issue here. Here, the argument is that I thought your attack was on the entire agreement that not only are you attacking the arbitration provision, but you're also attacking the fees that the defendant imposed, that there were provisions, conditions, if you will, of the rest of the contract that were not authorized by the defendant and that were illegal under California law. So I guess isn't this an attack on the entire agreement? No, well, I mean, certainly, the merits of the underlying things concern the nature of the scheme as a whole. But what you have to try to figure out under Granite Rock, under the Supreme Court's cases, is what is the nature of the attack being made on the arbitration agreement, on whether there is authority that this court has to compel arbitration. And what Granite Rock is telling you is when it's a formation question, when it's a question of whether the parties have freely consented to arbitrate at all, that is unquestionably for the court, how else could it be otherwise? I'm with you on the attack on the arbitration provision, but what about your attack on all the other aspects of the agreement? It's not just the arbitration provision that you're attacking, and it's the same argument that I was coerced into entering under threat of criminal prosecution. No, no, that's not right. I mean, the attack on the arbitration agreement is a duress argument, it's a contract formation argument. And under California law, that is a question of consent, and the Supreme Court has described it as a formation argument. I mean, you're struggling valiantly to try and excise the arbitration provision from the rest of the contract, but as I read your arguments and the record here, it's an attack on the formation of the contract. You've got people saying, you know, I would never have entered into this contract had I known that victim services was not authorized to make these threats by the district attorney. The question you have to decide,  getting confused, it's conflating the merits with the inquiry and the motions that compel arbitration suit. The question is, if I'm right and you're wrong, you'll be able to make all of these arguments to an arbitrator, will you not? And the arbitrator will have the power to declare that the contract is void and an impeachment. I'm not arguing that the contract is void. That was the argument in Bacchae. I'm arguing that if you sent the case to the arbitrator, you would be doing so outside of your power to do so because there's no freely consented agreement. And the arbitrator wouldn't have the power to decide that dispute because nobody's freely consented to  arbitration. And if you conclude that there was a meeting of the minds between these parties, that there was a formed contract despite the threat of criminal prosecution, then you should send it to arbitration. But that would be passing away and      outside of your power to do so. I mean, you know, in Concepcion, take a look at Justice Thomas' concurrence, he identifies duress as a formation question so you have to decide based on that duress argument, is there a contract even though the supposed contract was arrived at in the shadow of the threat of criminal prosecution. And my friends on the other side do not identify any cases in which there is something that was purported to be a contract that was arrived at as a product of threats of criminal prosecution where courts in California or anywhere else for that matter have regarded it as a freely consented agreement. If I don't agree with that conclusion can this case be resolved on the distinction that Judge Schroeder was asking about the conclusion that this is not a private agreement, this is an agreement between a state agent, and therefore the Federal Arbitration Act doesn't apply at all to the   Judge Schroeder was asking about. I think  the Federal Arbitration Act doesn't apply to the case that Judge Schroeder was asking about. I think that the  Arbitration Act doesn't apply I think that the Federal Arbitration appealability conclusion is going to be dependent on the particular features of each state's law. We'll hear that it would be quite strange to say that where the California legislature has taken steps to ensure that you don't have appeals like this that delay the proceedings in a public interest case and has withdrawn the appeal procedure in California, that we nevertheless think that the substantive right in California law is worth protecting with a cumbersome interlocutory appeal in Federal Court. And so I think you do not have to revisit that small point. I know some of the judges on this court have questioned the underlying foundations of this Court's jurisprudence. I don't think you as a panel have to question those foundations to conclude that under your precedent that there's no appeal here. Are there no other questions? It is available. Thank you. Thank you very   Your Honor. At no point has it been mentioned that this agreement contained a meaningful appeal procedure in California. It was not  mentioned in the Supreme Court  Sanchez. The teacher nursing decision here, Your Honor, I think is really decisive here in terms of the arguments regarding contract formation. First of all, it has been mentioned that the contract formation argument is based on substantial evidence. There's no allegation of inferiority. So I'm a bit confused as to why the contract formation arguments are being pursued. That's not an overall issue at this stage given that the contract was formed and then was   actual argument that the contract formation had its validity. And for that reason, unlike Buckeye, that footnote that my colleague referred to has led to some confusion among the courts, this was in the Supreme Court, no uncertain terms. Just one last point, Your Honor, I would have the court note the Silverdale case in which a similar program, which was a much more forceful threat of prosecution, Your Honor, a genuine threat of prosecution behind this case, that in that case enrollment of programs does not be voluntary by the Sixth Circuit.  I would urge the court to consider that, especially with its line of questioning regarding precision threats. Thank you very much. The case   time.
judges: Schroeder, Tallman, Whaley